IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
NORTHERN DIVISION AT KNOXVILLE

| | |
|---|---|
| HARTFORD FIRE INSURANCE COMPANY, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Case No. |
| TININ CONTRACTING COMPANY, INC., | ) |
| ROCKY POINT ROCK QUARRY, INC., and | ) |
| JAMES THOMAS TININ | ) |
| | ) |
|     Defendants. | ) |

## COMPLAINT

Plaintiff Hartford Fire Insurance Company ("Hartford"), by and through counsel, states the following for its Complaint against Defendants Tinin Contracting Company, Inc. ("Tinin Contracting"), Rocky Point Rock Quarry, Inc. ("Rock Point"), and James Thomas Tinin (each individually an "Indemnitor" and collectively the "Indemnitors"):

### I.    PARTIES

1. Hartford is a corporation formed under the laws of the state of Connecticut with its corporate headquarters and principal place of business located at 690 Asylum Avenue, Hartford, Connecticut 606115, which is the location from which Hartford's high-level officers direct, control, and coordinate Hartford's corporate activities. Thus, Hartford is a citizen of the state of Connecticut for purposes of diversity jurisdiction under 28 U.S.C. § 1332(a).

2. Tinin Contracting is a corporation formed under the laws of the state of Tennessee with its corporate headquarters and principal place of business located at 1149 Ross Creek Road, Clifton, Tennessee 38425-5311, which is the location from which Tinin Contracting's high-level officers direct, control, and coordinate Tinin Contracting's corporate activities. Thus, Tinin

Contracting is a citizen of the state of Tennessee for purposes of diversity jurisdiction under 28 U.S.C. § 1332(a).

3. Rocky Point is a corporation formed under the laws of the state of Tennessee with its corporate headquarters and principal place of business located at 1149 Ross Creek Road, Clifton, Tennessee 38425-5311, which is the location from which Rocky Point's high-level officers direct, control, and coordinate Rocky Point's corporate activities. Thus, Rocky Point is a citizen of the state of Tennessee for purposes of diversity jurisdiction under 28 U.S.C. § 1332(a).

4. Mr. Tinin is a citizen of the state of Tennessee who, upon information belief, resides at 3230 Tom Holt Road, Unit R, Clifton, Tennessee 38425-5327.

## II. JURISDICTION AND VENUE

5. This Court possesses original jurisdiction over Hartford's claims against the Indemnitors pursuant to 28 U.S.C. § 1332(a) because the matter in controversy exceeds the sum or value of $75,000 exclusive of interest and costs, and the matter in controversy is between citizens of different states.

6. This Court possesses the power to declare the respective rights and other legal relations of Hartford and the Indemnitors as requested herein pursuant to 28 U.S.C. § 2201(a).

7. Venue is proper in the Northern Division of the Eastern District of Tennessee under 28 U.S.C. § 128(a)(1) and 28 U.S.C. § 1391(b)(1) because each of the Indemnitors resides and/or is located in the Northern Division of the Eastern District of Tennessee.

## III. FACTUAL ALLEGATIONS

### The Indemnity Agreement

8. At all relevant times, Tinin Contracting was engaged in the construction contracting business and was sometimes required to provide surety bonds in connection with its construction contracts.

9. As a condition of Hartford's issuance of surety bonds on behalf of Tinin Contracting, the Indemnitors executed the General Indemnity Agreement attached hereto as **Exhibit 1** (the "Indemnity Agreement") in favor of Hartford on or about April 14, 2015.

10. The Indemnity Agreement defines the term "Indemnitor" as follows:

"Indemnitor" shall include, among others, each and every one of the following persons or entities on behalf of itself and all of its existing or prospective heirs, personal representatives, executors, administrators, parent companies, purchasers, successors (through asset acquisition or otherwise), assigns, related entities, co-venturers, joint ventures, affiliates, subsidiaries, divisions, and marital communities along with any entity (whether partially or wholly owned and/or controlled) of whatever description and whenever formed or acquired in which any of the foregoing persons or entities have an ownership or beneficial interest. Indemnitor shall also include any Principal.

11. The Indemnity Agreement defines the term "Principal" as "any person or entity in whose name a Bond is executed."

12. The Indemnity Agreement defines the term "Hartford" as follows:

"Hartford" shall include, individually or collectively, Hartford Fire Insurance Company, Hartford Casualty Insurance Company, Hartford Accident and Indemnity Company, Hartford Underwriters Insurance Company, Twin City Fire Insurance Company, Hartford Insurance Co, many of Illinois, Hartford Insurance Company of the Midwest, Hartford Insurance Company of the Southeast and any of said companies current or future, direct or indirect insurance company affiliates, subsidiaries, parents, assigns, successors, divisions, co-sureties, reinsurers, or any other person or entity Underwriting any Bond at Hartford 's request.

13. The Indemnity Agreement defines the term "Loss" as follows:

"Loss" shall include all manner of losses, costs, expenses or fees of any kind or nature which are paid or incurred by Hartford as a result of or in any way relating to the entering into and enforcement of this Agreement or the Underwriting of any Bonds. Loss shall include, without limitation, any and nil expenditures relating to Hartford's financial investigations, claim investigations, claim payments, payment to discharge liability and Bond related litigation of any nature, legal, expert, administrative, consultant and other professional fees and costs, court costs, travel expenses, unpaid premiums, unpaid loans which may be extended to, or guaranteed for or on behalf of any Indemnitor and interest on sums expended the maximum lawful rate. Loss shall be determined broadly in favor of Hartford.

14. The Indemnity Agreement defines the term "Bond" as follows:

> "Bond" shall include any and all bonds, undertakings, guarantees, commitments, obligations of suretyship and like instruments Underwritten by Hartford or others, including all riders, renewals, continuations, endorsements, changes or modifications on behalf of or at the request of Indemnitors for which Hartford has an obligation pursuant to a merger, acquisition, asset purchase or similar transaction. For purposes of this Agreement only, in the event Hartford or its authorized agent issues a prequalification or bondability letter or any similar expression of opinion ("Prequalification Letter"') on behalf or at the request of any Indemnitor, said Prequalification Letter shall fall within this Agreement's definition of "Bond."

15. The Indemnity Agreement defines the term "Underwrite" as follows:

> "Underwrite" shall include all manner of underwriting, furnishing, issuing, procuring, analyzing, assuming, executing, considering, renewing, extending, altering, modifying, participating in or continuing any Bond.

16. With respect to the scope of the application of the Indemnity Agreement, Paragraph 2 of the Indemnity Agreement states:

> This Agreement shall apply to all Bonds Underwritten by Hartford, whether prior to, simultaneously with, or subsequent to this Agreement's execution (1) on behalf or at the request of any Indemnitor, or (2) in connection with contracts with in which any Indemnitor has an interest; or (3) for or at the request of any present or future parent, affiliate or subsidiary of any Indemnitor; or (4) for any third party at the request of any Indemnitors. This Agreement is solely for the benefit of Hartford and no other person or entity shall have any rights under this Agreement. The rights of Hanford under this Agreement are in addition to and not in lieu of any and all rights granted by law. Hartford shall have the absolute right to apply any amount owed to any Indemnitor against the amount owed by that Indemnitor to Hartford including the right to set-off any debt owed to any third party against any liability of any Indemnitor that owns or controls said third party.

17. With respect to the Indemnitors' duty to indemnify, exonerate, and hold Hartford harmless from and against all "Loss," Paragraph number five of the Indemnity Agreement states:

> The Indemnitors shall at all times indemnify, exonerate and hold Hartford harmless from and against all Loss, claims, demands, liabilities, suits and causes of action which are in any way related to any Underwriting activities, Bonds or this Agreement. Indemnitors shalt immediately notify Hartford in writing of any demand, notice, suit, claim, action or proceeding relating to any Bond. Hanford may bring separate suits on this Agreement as causes of action accrue, and the

bringing of such suit or suits or the recovery of judgment upon any cause of action shall not prejudice or bar the bringing of additional suits or causes of action. Confirmation of payments through Hartford's electronic claim system, copies of releases, or other evidence of such payments which are maintained by Hartford in the ordinary course of business shall be prima facie evidence of the existence and extent of the liability of the Indemnitors to Hartford.

18. With respect to Hartford's absolute right to settle any claim against any "Bond," Paragraph 7 of the Indemnity Agreement states:

> Hartford shall have the absolute right to adjust, settle, dispute, litigate, appeal, finance, or compromise any claim, demand, suit, judgment or exposure relating to any Underwriting activities or Bonds without affecting the Indemnitors' liability under this Agreement and Hartford's determination shall be binding upon the Indemnitors. This absolute right includes the right, but not the obligation, to advance funds or guarantee loans to any Indemnitor. The Indemnitors shall be obligated to Hartford for all payments occasioned thereby whether said payments were made by Hartford in the belief that either (1) Hartford was or might be liable therefore; or (2) payments were necessary or advisable to protect Hartford's rights or to mitigate Harford's potential liability or Loss. Upon Hartford's demand, Indemnitors shall establish a trust account or accounts with a financial institution acceptable to Hartford, and shall deposit all monies from any contracts for which a Bond has been Underwritten into said trust account(s). The trust account(s) shall be restricted, requiring the signature of an authorized representative of Hartford on all checks or other withdrawal orders drawn against said account(s).

19. With respect to the trust fund nature of the proceeds of any contract covered by any "Bond," Paragraph 11 of the Indemnity Agreement states:

> If a Bond is Underwritten in connection with the performance oi any contract, the entire contract price shall be dedicated to the satisfaction of the obligations of the Bond and this Agreement. All money paid or any securities, warrants, checks or evidences of debt given under contracts relating to or for which a Bond has been issued shall be impressed with a trust for the purpose of satisfying the obligations of the Bond Underwritten for said contract and this Agreement and shall be used for no other purpose until all such obligations have been fully satisfied.

20. With respect to the joint and several nature of the Indemnitors' obligations to Hartford, Paragraph 14 of the Indemnity Agreement states:

> The Indemnitors' obligations under this Agreement are joint several and continuing. Hartford all not be required to enforce or exhaust its rights or remedies against any one or more Indemnitors before asserting its rights against any other Indemnitors.

21. With respect to the Indemnitors' waiver of certain rights that may have otherwise existed, Paragraph 17 of the Indemnity Agreement states:

(a) **Waiver of Notice**. The Indemnitors expressly waive any right to be notified by Hartford of the fact or happening of any act, event, information or occurrence which has or may give rise to the possibility of Loss or promote the recovery of Lass under this Agreement, including, without limitation, Underwriting, conceiting, declining, nonrenewing, or modifying any Bonds, claims, demands, lawsuits, settlements, releases, loans, forbearances or other like acts, events or occurrences, it being expressly confirmed by the Indemnitors that lack of notice to an Indemnitor of any matter known to Hartford shall not be asserted as a defense to any claim by Hartford nor shall it form the basis of a demand against Hartford regardless of any defenses or objections which might have been asserted by Indemnitors to such actions. Additionally, the Indemnitors expressly waive any right to be notified by Hartford, that it (a) executed any Bond for any Indemnitor; (b) effected changes in Bonds or bonded contracts or the plans or specifications relating to them; (c) increased or decreased any Indemnitors obligations under this Agreement.

(b) **Waiver of Homestead/Property**. To the extent permitted by law, Indemnitors expressly waive, abandon and agree not to assert in any proceeding or action relating to any Bond or the enforcement of this Agreement, any statutory or common law claims or exemptions relating to Homestead and any claim that any property, whether Homestead or otherwise, is exempt from levy, execution, sale or other legal process under the laws of any State, Territory, Possession or Tribe.

(c) **Procedural Waivers.** In any proceeding or action relating to any Bond or the enforcement of this Agreement, Indemnitors, unless requested by Hartford to assert said rights, expressly waive, abandon and agree not to assert as a claim, defense or otherwise:

   (i) any right to a trial by jury; and

   (ii) any objection to venue, claim of forum non conveniens or any claim that the court in which the action or proceeding is brought lacks personal or subject matter jurisdiction; and

   (iii) any claim that the law applicable to any action or proceeding as determined by Hartford is improper or incorrect; and

   (iv) exhaustion of remedies.

22. With respect to the choice of law relative to the interpretation/enforcement of the Indemnity Agreement, Paragraph 18 of the Indemnity Agreement states:

At the sole election of Hartford, this Agreement is to be governed by the laws of the State in which any Indemnitor resides or can be located or the site of any contract for which any Bond is Underwritten. Hartford's election hereunder shall be binding on the Indemnitors.

## **The Payment Bond and Hartford's "Loss" Thereunder**

23. Tinin Contracting entered into an Agreement (the "Agreement") with Lawrence County, Tennessee ("Lawrence County") under which, as more fully set forth therein, Tinin Contracting undertook the obligation to perform certain construction work on a project commonly referred to as Lawrence County 2014 CDBG Water Line Extensions (the "Project").

24. In reliance upon its rights under the Indemnity Agreement, Hartford issued Payment Bond 43BCHH0480 on behalf of Tinin Contracting relative to the Agreement, a copy of which is attached hereto as **Exhibit 1** (the "Payment Bond").

25. As reflected by the letter dated September 19, 2016 letter attached hereto as **Exhibit 2**, Consolidated Pipe & Supply Co., Inc. ("Consolidated") asserted a claim against the Payment Bond in the amount of $123,376.11 in relation to certain material Consolidated furnished to Tinin Contracting for use on the Project (the "Consolidated Payment Bond Claim").

26. At all relevant times, Hartford communicated with Tinin Contracting and its agents/representatives, including, but not limited to, Tinin Contracting's bond and insurance agent McDaniel-Whitley, Inc. (the "Agent"), relative to the Consolidated Payment Bond Claim and any defenses that Tinin Contracting may possess relative to the Consolidated Payment Bond Claim.

27. During Hartford's investigation of the Consolidated Payment Bond Claim, Consolidated submitted the Sworn Affidavit of Claim attached hereto as **Exhibit 3** (without its exhibits), which, as more fully set forth therein, asserted that Consolidated (a) had not been paid any amount relative to the material Consolidated had furnished to Tinin Contracting for use on the Project and (b) was owed $123,376.11 for that material.

28. During Hartford's investigation of the Consolidated Payment Bond Claim, Consolidated issued the Credit Memo attached hereto as **Exhibit 4** in the amount of $2,404.38, which reduced the Consolidated Payment Bond Claim to $121,971.73.

29. From the outset, Tinin Contracting, directly and/or through the Agent, led Hartford to believe that Tinin Contracting would resolve the Consolidated Payment Bond Claim without the necessity of any payment by Hartford under the Payment Bond.

30. For example, and without limitation, Tinin Contracting, directly and/or through the Agent, led Hartford to believe that Tinin Contracting would be making several partial payments to Consolidated, which would produce and ultimately resolve the Consolidated Payment Bond Claim without the necessity of any payment by Hartford under the Payment Bond.

31. While leading Hartford to believe that Tinin Contracting would be making several partial payments to Consolidated, Tinin Contracting directly and/or through the Agent, the photograph of Check No. 11181 attached hereto as **Exhibit 5**, which is made payable to the order of "Consolidated Pipe" in the amount of $25,000, along with the representation that the proceeds of that check would be applied to amounts that Tinin Contracting owed to Consolidated relative to the Project.

32. However, as reflected by the copy of Check No. 11181 attached hereto as **Exhibit 6**, Tinin Contracting actually directed that the proceeds of that check be applied to amounts that Tinin Contracting owed to Consolidated on a different project, which was denoted as the "Maury Co. project" on the check.

33. As reflected by the February 28, 2017 letter from Hartford to the Indemnitors attached hereto as **Exhibit 7**, Hartford, as more fully set forth in the letter, (a) outlined the history of Hartford's investigation of the Consolidated Payment Bond Claim, (b) advised the Indemnitors

1235590
8
Case 3:17-cv-00334-JRG-HBG   Document 1   Filed 08/03/17   Page 8 of 12   PageID #: 8

that Hartford would pay the balance of the Consolidated Payment Bond Claim by March 15, 2017 if the claim was not otherwise resolved, and (c) notified the Indemnitors that Hartford would "look to each indemnitor, jointly and severally for full reimbursement of any and all amounts paid."

34. Hartford subsequently learned that Tinin Contracting had directed that other payments Tinin Contracting had made to Consolidated be applied to satisfy debts owed to Consolidated on other projects, despite Tinin Contracting representing (directly and/or to the Agent) that those same payments would be applied to satisfy debts owed to Consolidated on the Project.

35. After Tinin Contracting failed to pay any amount to Consolidated relative to the material consolidated had furnished to Tinin Contracting for use on the Project, Consolidated retained counsel and threatened to initiate a lawsuit against Hartford if the Consolidated Payment Bond Claim was not resolved, in which Consolidated would seek to recover interest, attorneys' fees, and other damages under the Payment Bond.

36. As reflected by the Affidavit, Full Release and Assignment attached hereto as **Exhibit 8**, Hartford ultimately settled the Consolidated Payment Bond Claim for $108,489.65 pursuant to Hartford's rights under the Indemnity Agreement.

37. Hartford elected to settle the Consolidated Payment Bond Claim for $108,489.65 under the belief that Hartford was or might be liable to Consolidated for that amount and/or payment of that amount to Consolidated was necessary and advisable to protect Hartford's rights and to mitigate Hartford's potential liability for "Loss."

38. Hartford paid Consolidated $108,489.65 under the Payment Bond to resolve the Consolidated Payment Bond Claim.

## The Indemnitors' Failure to Indemnify Hartford

39. By letter dated May 4, 2017, a copy of which is attached hereto as **Exhibit 9**, Hartford, as more fully set forth in letter, (a) advised the Indemnitors that Hartford had paid $108,489.05 in losses under the Payment Bond, (b) enclosed a copy of the Indemnity Agreement, and (c) formally demanded that the Indemnitors indemnify Hartford as required by the Indemnity Agreement.

40. By letter dated May 31, 2017, a copy of which is attached hereto as **Exhibit 10**, Hartford, as more fully set forth in letter, Hartford advised the Indemnitors as follows:

> On May 4, 2017, the Hartford Fire Insurance Company ("Hartford") wrote to you and informed you that it had paid $108,489.65 for losses on the above referenced bond. Further, Hartford made you aware that you had an obligation to indemnify Hartford pursuant to the terms of the General Indemnity Agreement that you and your companies executed. To date, Hartford has received no response to that letter (a copy of which is enclosed).
>
> This is notice to you that if Hartford does not hear from you within 10 days with a plan on how you will meet your indemnity obligations, then Hartford will pursue legal action against all named Indemnitors under the General Indemnity Agreement and Hartford will seek to recover all of its legal fees pursuing this action in addition to pursuing the losses already incurred.

41. Despite Hartford's demand, the Indemnitors have failed to indemnify, exonerate and hold Hartford harmless from and against all "Loss" relative to the Consolidated Payment Bond Claim.

## IV. CAUSES OF ACTION

### Count I — Breach of the Indemnity Agreement Against the Indemnitors

42. Hartford incorporates the foregoing allegations as if fully set forth verbatim herein.

43. Under Paragraph 5 of the Indemnity Agreement, as more fully set forth therein, the Indemnitors are obligated to indemnify, exonerate and hold Hartford harmless from and against

all "Loss" in any way related to the Payment Bond, the Consolidated Payment Bond Claim, and/or the Indemnity Agreement.

44. To date, Hartford has incurred and continues to incur "Loss" related to the Payment Bond, the Consolidated Payment Bond Claim, and/or the Indemnity Agreement, which "Loss" currently exceeds $108,489.05.

45. Despite Hartford's demands, the Indemnitors have failed to indemnify, exonerate and hold Hartford harmless from and against all "Loss" in any way related to the Payment Bond, the Consolidated Payment Bond Claim, and/or the Indemnity Agreement.

46. The Indemnitors' failure to indemnify, exonerate and hold Hartford harmless from and against all "Loss" in any way related to the Payment Bond, the Consolidated Payment Bond Claim, and/or the Indemnity Agreement constitutes a material breach of the Indemnity Agreement.

47. Hartford has been damaged as a result of the Indemnitors' material breach of the Indemnity Agreement in an amount to be proven at trial, which amount currently exceeds $108,489.05.

### Count II — Equitable Indemnity/Reimbursement Against Tinin Contracting

48. Hartford incorporates the foregoing allegations as if fully set forth verbatim herein.

49. Pursuant to its common law right of indemnification/reimbursement, Hartford is entitled to indemnification/reimbursement from Tinin Contracting, the principal under the Payment Bond, for all loss suffered by Hartford, as surety, by reason of having issued the Payment Bond on behalf of Tinin Contracting.

50. Tinin Contracting has breached its common law obligation to indemnify/reimburse Hartford for all loss suffered by Hartford, as surety, by reason of having issued the Payment Bond on behalf of Tinin Contracting.

51. Hartford has been damaged by Tinin Contracting's breach of its common law obligation to indemnify/reimburse Hartford in an amount to be proven at trial, which damages currently exceed $108,489.059.

WHEREFORE, PREMISES CONSIDERED, Hartford prays for the following relief:

a) For the issuance of process requiring the Indemnitors to answer Hartford's Complaint;

b) For the entry of judgment against the Indemnitors, jointly and severally, in an amount sufficient to indemnify, exonerate and hold Hartford harmless from and against all "Loss" related to the Payment Bond and/or the Agreement in an amount to be proven at trial, which currently exceeds $108,489.059;

c) For the entry of judgment against Tinin Contracting in an amount sufficient to indemnify/reimburse Hartford for all loss suffered by Hartford, as surety, by reason of having issued the Payment Bond in behalf of Tinin Contracting and amount to be proven at trial, which currently exceeds $108,489.059; and

d) For such further relief, both general and specific, as may be appropriate in accordance with the nature of this cause including, but not limited to, pre-judgment and post-judgment interest.

Respectfully submitted,

　/s/ Jarrod W. Stone
Jarrod W. Stone　　BPR No. 023915
MANIER & HEROD
1201 Demonbreun Street, Suite 900
Nashville, Tennessee 37203
Phone: (615) 244-0030
Fax: (615) 242-4203
jstone@manierherod.com
Attorneys for Hartford Fire Insurance Company